## ELLIS G. COOK, Respondent, v. WM. L. NEELY et al., Appellants.

### Kansas City Court of Appeals, May 2, 1910.

1. **SCHOOL TEACHER: Corporal Punishment.** A teacher in the public school has a right to inflict reasonable personal chastisement upon a pupil who has been guilty of bad conduct tending to the demoralization of the school.

2. ———: ———: **Assault and Battery.** A teacher whipped one of his scholars for quarrelling and the use of profane language. In the evening of that day the father and the grown brother of the boy assaulted the teacher. *Held,* that they were liable in damages, both compensatory and exemplary.

3. ———: ———: ———: **Mitigation.** If a teacher inflicts cruel and excessive punishment on the pupil and the father and brother, being incited thereto by such cruelty, assault and beat the teacher, such conduct of the teacher may be shown in mitigation of the exemplary damages.

4. ———: **Evidence: Joint Defense.** Where father and son jointly assault and beat another and in an action against them for damages they file a joint answer, the wife of the father is not a competent witness for either.

5. ———: **Discretion of Trial Court: Surrebuttal.** A party defendant may introduce evidence in surrebuttal to meet evidence offered by plaintiff in rebuttal; but it is not error for the court to refuse to permit him to again go over the case by evidence in chief.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

AFFIRMED.

*H. S. Kelly, James W. Boyd, James Moran* and *Charles F. Strop* for appellants.

Punitive damages are not given as a matter of right and it is always a question for the jury to determine in any case whether or not they are to be allowed. Callahan v. Ingram, 122 Mo. 372; Nicholson v. Rogers, 129 Mo. 136; Sedgwick on Damages, sec. 387; 2 Thompson on Trials, sec. 2065; Carson v. Smith, 133 Mo. 606.

*K. D. Cross, W. A. Blogg* and *L. C. Cook* for respondent.

When a quarrel is entered into for some unlawful purpose, such as wreaking or gratifying malice, then there can be no self-defense in the case. State v. Dunn, 221 Mo. 530; State v. Underwood, 57 Mo. 50; State v. Starr, 35 Mo. 270; State v. Linney, 52 Mo. 40; State v. Shoultz, 25 Mo. 153; State v. Christian, 66 Mo. 138; State v. Peak, 85 Mo. 190; State v. Rose, 92 Mo. 201; State v. Feeley, 194 Mo. 322.

ELLISON, J.—Plaintiff's action is to recover damages for an assault and battery charged to have been inflicted upon him by defendants in Andrew county. There was a change of venue to Buchanan county, where plaintiff obtained a verdict for eighteen hundred dollars actual and six hundred dollars exemplary damages. This verdict was set aside by the court on the ground of error in rulings and another trial had which again resulted in plaintiff's favor, this time in the sum of three thousand dollars actual and five hundred dollars punitive damages. The court required a remittitur reducing the verdict to twenty-four hundred dollars, and judgment was rendered for that sum. Defendants then appealed to this court.

It appears that plaintiff was the principal in the public school in the Bolckow district, Andrew county, and that defendant William L. was the father of six children attending the school from their home about one and one-half miles outside the village, and he was likewise one of the directors of the school. One of his children, a boy named Reuben, fourteen years old, was one of the scholars and was the cause of the trouble which is the subject of this controversy. The other defendant, Oren, is a grown son of William and living with him.

At the afternon recess of the 14th of February, 1906, it was reported to plaintiff that Reuben had called another boy a son of a bitch, and he called him up for inquiry about it, when Reuben admitted he had done so. After consultation with the other teachers plaintiff took Reuben into the hallway and gave him a whipping, using a peach tree sprout switch, about one-half inch in diameter at the large end. After the whipping Reuben asked permission to go out to the closet. This was granted and then plaintiff observed a boy also going to the closet, whom he supposed (though he was mistaken) to be the one who had been in the difficulty with Reuben. For that reason he went out to the

closet and as he stepped on the platform outside, he heard the other boy ask Reuben about the whipping and the latter replied that plaintiff, "the damned son of a bitch, had whipped him." Plaintiff then stepped inside, took Reuben back to the hall and whipped him a second time.

After the dismissal of school that evening Reuben and his brothers and sisters went to their home and, as shown by different members of the family, including defendants, all, or some of the children, reported the whipping to their parents. The latter examined the boy and evidence in behalf of defendants tended to show that he had welts on his body, some of them breaking the skin so that blood "oozed out" and stained his shirt. It may be stated in behalf of defendants that the evidence introduced by them tended to show an excessive and immoderate whipping. On the other hand the evidence in behalf of plaintiff tended directly, and by legitimate inference, to show that the whipping was not immoderate and that it was properly administered.

That evening, about nightfall, plaintiff came from his home to the postoffice to get the evening mail and was standing in the street nearby leaning against an iron railing around a public well, awaiting the arrival of a mail train from the south. Presently defendant Oren, the brother, came up, and they greeted each other in a friendly way. After engaging in conversation a moment, an acquaintance passed by and gave to plaintiff a bunch of keys, one being the key to his postoffice box, and requested plaintiff to get his mail for him. In a short time W. L. Neely, the father, came up, and they spoke, saying "good evening," each calling the other's name. Plaintiff then made some remark about the day or the weather, when W. L., without warning, struck him and a serious combat began, the two defendants violently assaulting and beating him, with some kind of weapons in their hands. There was evidence tending to show that Oren had a slung-shot and W. L., the father,

some metal substance, though they denied having anything. Realizing his disadvantageous situation, plaintiff started for the postoffice, with defendants pursuing and holding on to him. He had some difficulty in getting the door open. The postmaster testified that he heard a scuffling at the door and that "it flew open when plaintiff entered in the lead with defendants following: they came in fighting." In the struggle inside, defendant W. L. was holding plaintiff while Oren struck him over the head. Plaintiff, in his effort to rid himself of W. L.'s hold, threw him into or onto a glass show case. The postmaster and another gentleman who was with him, succeeded in separating the parties, and the defendants went outside. Plaintiff then asked for a pistol, but the postmaster told him he did not have one. Blood marked the course of the encounter. The back of W. L. Neely's hand was cut. He stated it was from a knife in plaintiff's hand. This the latter denied, and it was his claim that the cut came from the glass case into which he threw him when trying to loosen his hold.

Plaintiff was severely hurt, and the evidence tended to show that he was in a dazed condition in the postoffice. A couple of physicians dressed his wounds on the head, consisting of several cuts to the bone, appearing to have been made by some blunt instrument. He was then assisted home and yet appeared dazed, and was, to some extent, in the same condition next day. He was in bed for a time, but in the course of ten or twelve days was able to resume his duties at school.

As already intimated, there was a conflict in the testimony, and this included the beginning of the fight, but, since the verdict was in plaintiff's favor we must accept the evidence in his behalf as showing the facts. It is therefore quite clear that the verdict is abundantly justified by the record, and we have only to see if there was any error in the rulings of the court which can be said to afford just ground of complaint.

Defendants offered Mrs. Neely, wife of W. L. Neely, as a witness in behalf of her son Oren. She was excluded on account of being the wife. They answered jointly and so prosecuted their defense. The answer pleads that plaintiff made the first assault by striking defendant W. L. Neely. It then admits that defendants jointly assaulted plaintiff, but stated it was in self-defense. It alleges that plaintiff, during the conflict, was endeavoring to obtain a revolver with which to kill one or both of defendants and that they used such force as was reasonably necessary to prevent plaintiff from getting such weapon, and that they did not do him any unnecessary damage or harm. They then allege that if any hurt or damage happened to plaintiff, it was occasioned by his own misconduct and first assault.

By such answer they made their defense a joint one and admit their joint assault. In such circumstances the wife of one of them was not a competent witness for either. [Tomlinson v. Lynch, 32 Mo. 160.]

It is next insisted that error was committed in excluding testimony of Reuben, the boy who was whipped. Singularly enough this boy, who was the central figure in the unfortunate affair, was not offered as a witness until each side had closed the case in chief. On the close of the evidence for defendants, the plaintiff introduced evidence in rebuttal. It was upon the close of that evidence that defendants offered Reuben in surrebuttal. But in thus doing in name, they in reality sought to examine him principally on matters that should have been related in chief. In some instances the questions were so asked as to make it difficult to say whether the answer sought was matter in chief or matter in answer to what had been called out by plaintiff in rebuttal. But after going over that part of the record, we are satisfied with the rulings made by the court in so far as justice to the defendants is concerned.

Before entering upon objections made to the instructions, we will say that under the law of this State a school teacher has a right to discipline pupils by personal chastisement in a reasonable and moderate manner. [Haycraft v. Grigsby, 88 Mo. App. 354; State v. Boyer, 70 Mo. App. 156.]

If he goes beyond this, and punishes the pupil in a cruel or inhuman manner, and the parent, being incited thereto by such punishment, should assault and beat the teacher, such cruel punishment, while not justifying the assault, may be shown in evidence in mitigation of exemplary damages.

The instructions given were six in number for the plaintiff and nine for defendants, excluding formal ones. They covered all the law on the subject and as a series they presented every phase of the law which defendants had a right to invoke.

Instruction 6 for plaintiff is the one most prominently objected to by defendants. It is criticized on the ground that it is mandatory in directing damages to be assessed against defendants. It reads that:

"The jury are instructed further that in arriving at their verdict in this case, they should assess separately whatever amount they find as actual or compensatory damages sustained by the plaintiff as the result of defendants' assault upon him, if any, and amount of punitive damages, or smart money, if any, and in their verdict say how much they assess against the defendants for each kind of damages so assessed."

The instruction is not subject to the objection stated. It can only be said that it peremptorily directs the jury to separate in the verdict the two kinds of damages *if any* damages are found. And when read in connection with those immediately preceding it, there is not the least ground to suppose the jury could have understood they were peremptorily directed to find some damages. The instruction referred to in Williams v. Williams, 132 Mo. App. 266, did not have the

qualifying phrase "if any," contained in this instruction.

The criticism of other instructions is without practical basis. Number 4 properly laid down the law as we stated it above, and we cannot discover any ground of objection as suggested in the argument advanced.   The objection to the argument is not so much to legal propositions stated as it is to the attempt to apply them to the instructions as written.   In objecting to the grounds stated as justifying a resort to self-defense in instructions Numbers 1 and 2, it is said that no room for repentance and an attempt to withdraw from the difficulty, although it may have been brought on by plaintiff, was included.   While the parties each accused the other of starting the difficulty, no one suggested that defendants wanted to repent or withdraw after starting it.

Complaint is made that the court modified defendants' instruction Number 1.   That instruction informed the jury that if they believed plaintiff whipped the boy cruelly and immoderately, it was illegal and improper.   The court added to it that "such cruel and unusual whipping may be considered in determining the question of allowing or not allowing punitive damages."   That was a proper qualification, as that was the only way in which the whipping could affect the case.

The court also qualified defendants' instruction Number 5, on the subject of defendants' right of self-defense, by adding that only such force as appeared reasonably necessary could be used in self-defense. That was proper.

Some instructions, mainly on the subject of the right of self-defense, were refused for defendants.   We have examined each of these and find that all which was proper in them had been covered by those given.

Objection was made to the conduct of plaintiff's counsel in the argument in asserting that a warrant which W. L. Neely had issued for plaintiff the evening

of the difficulty, was suppressed. There was a colloquy between counsel and the court as to whether there was any evidence on that subject, the court stating he thought he remembered something of the kind. We find that there was evidence that Neely had the warrant issued, and then to a question whether he had not directed that it be not served, objection was made and it was, not answered. Considering the fact that Neely testified to having the warrant issued and the further fact that it does not appear to have been served, we do not feel we would be justified in saying that counsel was not entitled to refer to the matter in the manner he did. Especially is this true in view of the trial court's remark that the jury would only look to the evidence in reference to what was said about a warrant.

In view of the evidence in the cause, we can by no means agree with defendants that the verdict indicated passion or prejudice on part of the jury.

We regard the record as showing a fair trial, free from any substantial error, and in which every indulgence to defendants which the law could permit, was extended. The verdict for the plaintiff was sustained by a preponderance of the testimony, showing an aggravated assault, perpetrated by two against one, and that without justifiable cause. The judgment is affirmed. All concur.